## JONES v. THOMPSON-STARRETT CO.

(Supreme Court, Appellate Division, Second Department. February 28, 1913.)

Appeal from Trial Term, Nassau County.

Action by John B. Jones against the Thompson-Starrett Company. From a judgment of the Supreme Court in favor of the plaintiff, defendant appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

James J. Mahoney, of New York City (M. J. Wright, of New York City, on the brief), for appellant.

B. L. Pettigrew, of New York City (Ralph Gillette, of New York City, on the brief), for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

WOODWARD, J. (dissenting). On the 17th day of March, 1911, the plaintiff was employed by the defendant upon the Municipal Building in Manhattan. The defendant was the general contractor for the construction of the building, and the plaintiff was employed as an assistant foreman in the work of constructing the steel work for the building. The steel superstructure was up from 6 to 10 stories, and the main or ground floor of the building, which had been floored over temporarily for the purposes of the work, had been stripped of this covering. On either side of the building there were temporary locations for engines used in the hoisting of materials, and the intervening space was laid out in panels of the steel work. These consisted of I-beams 16 inches in depth and 6 inches wide on top and 21 feet in length, placed on girders, and these I-beams were placed at intervals of 5 feet and 10 inches, so that there were oblong squares 21 feet in length and 5 feet 10 inches in width covering the entire ground floor of the building, and from one of these engine stands a single plank runway had been placed, extending across the building to the other engine stand. For the most part, this runway consisted of 2-inch planks, 10 inches in width; the planks being laid side by side at the point where they rested upon the I-beams, but being suspended as a single plank over the intervening spaces, so that the planks across the building presented a zigzag line. One of these planks, it appears, was only one inch in thickness, and the plaintiff's cause of action is predicated upon the fact that, in attempting to cross from one engine room to the other upon this zigzag pathway, he stepped upon this one-inch plank, which slipped, and he was precipitated into the basement below, sustaining serious injuries. The plaintiff's own testimony is that he had himself ordered the taking up of the temporary flooring, and there is no evidence from which it can be known who was responsible for the laying of this zigzag line of planks across the floor space of this building, or for what purpose it was placed, while there is room in the evidence for the conclusion that these planks were merely a lot of loose planks which had been miscellaneously left upon

these uncovered beams, without any definite object in view. Assuming them to have been placed for some purpose, however, and that they were placed there in behalf of the defendant, I am unable to discover where the defendant was negligent, or that the plaintiff has furnished evidence from which the jury was entitled to find that he was free from contributory negligence.

The case seems to have been tried upon the theory that this zigzag pathway was a scaffolding provided by the defendant, and that the fact of the accident established negligence on the part of the defendant, under the provisions of section 18 of the Labor Law (Consol. Laws 1909, c. 31). There are, however, several elements lacking. Section 18 provides that:

"A person employing or directing another to perform labor of any kind in the erection * * * of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

The plaintiff was employed as an assistant foreman for the construction of the steel superstructure. The work for which he was employed had all been performed upon the ground floor; it had reached a height of from 6 to 10 stories, and all of the covering of the ground floor had, by the order of the plaintiff, been removed and carried to the floors above. So far as the structural steel workers were concerned, the ground floor was merely the panels which we have described, without any covering whatever; the flooring which had been there, and which we may assume was necessary in the performance of the work, had been taken away, and no use is suggested for this zigzag pathway so far as the construction of the steel superstructure is concerned. How, then, assuming that this zigzag pathway is to be construed as a scaffold, can it be said that the defendant, in employing the plaintiff in the construction of the steel work, had furnished or erected, or caused to be furnished or erected, for the performance of such labor, scaffolding which was unsafe, unsuitable, or improper? There is no evidence that the runway was in any manner necessary for the performance of any labor which the plaintiff then had in hand, and which was being done 6 to 10 stories above the ground floor; no evidence that the defendant erected or caused to be erected this runway for the performance of such labor. It is not even established that the planks in question were owned by the defendant, much less that they were placed there for the performance of any labor for which the · plaintiff was employed with the knowledge or consent of the defendant. While the courts have gone a long way in holding plankings to constitute scaffoldings, where such plankings were being used in connection with the work actually in progress, we know of no case where a mere runway in a portion of a building far removed from the work in hand, and not having been constructed or used in connection with such work, has been held to constitute the basis for liability under section 18 of the Labor Law, and we are admonished by the Court of Appeals

(Quigley v. Thatcher, 207 N. Y. 66, 100 N. E. 596) that this section of the statute is not to be unreasonably extended in its operation.

In this view of the case, and the action being one at common law, where is the negligence on the part of the defendant? The conditions of this runway were open and obvious to the plaintiff. He was a man of intelligence and experience. He had worked on this class of construction for years, understood all about it, and knew just how this runway was constructed. He knew that the planks were not fastened to the I-beams, and he says that on the evening of the 15th of March he worked upon the job until about 10 o'clock in the evening, and that at that time it was raining, and that snow subsequently fell, and that this snow had been shoveled or cleaned off the planks on the 16th, and that he thought some of the snow was left on. The accident happened on the 17th. He knew all of the conditions as well as the defendant could have known them if the latter had been there as an individual, and, if the plaintiff was justified in making use of this runway and stepping upon this thin plank without making any effort to determine its safety, it could hardly be that the defendant was negligent in respect to any duty which it owed the plaintiff in not discovering the danger which was discovered to the plaintiff when the plank slipped. There is no pretense that the plank broke, or that it was defective in any way. All there is of the case is the fact, if it is a fact, that the plaintiff, knowing all of the conditions as well as any one could know them, stepped upon a plank which he knew to be loose, and the plank slipped and he fell. Clearly, in a common-law action the plaintiff must be deemed to have known and accepted the risk of this accident.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event.

JENKS, P. J., concurs in dissent.